## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Doe 318,                                        Civil No. 16-1297 (DWF/TNL)

              Plaintiff,

v.

The Conventual Franciscans, a/k/a Conventual          **MEMORANDUM**
Franciscan Friars, Province of Our Lady of         **OPINION AND ORDER**
Consolation, a/k/a Conventual Franciscan Fathers
(Prov. of Our Lady of Consolation), The Province of
Our Lady of Consolation, Incorporated, a/k/a The
Conventual Franciscan Fathers (Mt. St. Francis Ind.),

              Defendant.

_____

Jeffrey R. Anderson, Esq., Michael G. Finnegan, Esq., Elin M. Lindstrom, Esq., and
Trusha Patel Goffe, Esq., Jeff Anderson & Associates, P.A., counsel for Plaintiff
Doe 318.

Lawrence M. Rocheford, Esq., and Patrick S. Collins, Esq., Jardine, Logan & Obrien,
P.L.L.P., and Donald J. Kelly, Esq., Wyatt, Tarrant & Combs, LLP, counsel for
Defendant.

_____


## INTRODUCTION

      This matter came before the Court on August 12, 2016, pursuant to a Motion to

Dismiss or, in the Alternative, Transfer, filed by Defendant.  (Doc. No. 9.)  In addition,

per the direction from the Court after submissions of letters, Plaintiff brought a request

for limited jurisdictional discovery by Plaintiff.  (*See* Doc. Nos. 16-18.)  For the reasons

set forth below, the Court denies the motion and grants in part Plaintiff's request for limited jurisdictional discovery.

## BACKGROUND

Plaintiff initially filed his Complaint in Minnesota District Court in Scott County, Minnesota. (Doc. No. 4-1.) Plaintiff alleged three counts against Defendant, the Province of Our Lady of Consolation ("Province"): negligence, negligent supervision, and negligent retention. (*Id.*, at 10-12.) All of these counts arise out of the alleged abuse of Plaintiff by Father Brennan Harris, a priest "employed" by the Province. (*Id.* ¶¶ 3-7.)

In his Complaint, Plaintiff alleged that the Province "was and continues to be a Roman Catholic religious order of priests and brothers affiliated with the Roman Catholic Church with its headquarters located at 101 St. Anthony Drive, Mount Saint Francis, [Indiana]." (*Id.* ¶ 2.) Plaintiff further alleges that the Province is "an organization or entity which includes, but is not limited to, civil corporations, decision-making entities, officials, and employees, authorized to conduct business and conducting business in the State of Minnesota with its principal place of business located at 16385 Saint Francis Lane, Prior Lake, [Minnesota]." (*Id.*)

The Province subsequently removed the case to federal court (Doc. No. 4), and filed a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) or, in the alternative, to transfer the case to the Eastern District of Wisconsin. (Doc. No. 9.) Filed in support of its motion was the Affidavit of Brother Nicholas Wolfla, the Provincial Secretary of the Province setting forth the Province's

structure and contacts with Minnesota.  (Doc. No. 13.)  The Province is part of the Order

of Friars Minor Conventual, also known as the Conventual Franciscan Order, which is an

international religious order of friars within the Roman Catholic Church.  (*Id.* ¶ 2.)  The

Province itself is a Kentucky non-profit corporation that has its provincial office at

Mount St. Francis, Indiana.  (*Id.*)

Plaintiff alleges that Father Harris engaged in unpermitted sexual conduct with

Plaintiff from "approximately 1973 to 1974[.]"  (Doc. No. 4-1, ¶ 7.)  At that time,

Brother Wolfla states that Father Harris lived in Wisconsin and served with the

Archdiocese of Milwaukee.  (Doc. No. 13, ¶ 3.)  While the Province admits that it has

members spread across nine states and two foreign countries (*id.*), the Province contends

that it has little contact with Minnesota.  The Province claims that it does not maintain

any offices in Minnesota (*id.* ¶ 4), does not maintain any bank accounts in Minnesota

(*id.* ¶ 5), does not maintain any employees or agents in Minnesota, including any

registered agent for service of process (*id.* ¶ 6), and does not conduct or transact business

in Minnesota, nor is it licensed to do so (*id.* ¶ 7).  The Province further contends that no

Minnesota resident owns any stock in the Province.  (*Id.* ¶ 8.)

The Province does, however, have some presence in Minnesota.  The Province

owns a property in Prior Lake, Minnesota, which it claims it "leases to a separate and

distinct non-profit corporation called the Franciscan Retreats and Spirituality Center

("Retreat Center")."  (*Id.* ¶ 9.)  The Province contends that the Retreat Center runs the

Prior Lake property as a "spiritual retreat facility." (*Id.*)  Other than the Prior Lake

property, the Province contends that it owns no other real property in Minnesota. (*Id.*)

In addition to the Prior Lake property, the Province contends that it has six active

members of the Province who reside in Minnesota. (*Id.* ¶ 10.)  Four of those members

hold staff positions at the Prior Lake property. (*Id.* ¶ 11.)  However, the Province

contends that it does not employ any of the Retreat Center's staff, including the four

Province members holding staff positions at the Prior Lake property. (*Id.*)  Two members

of the Province hold staff positions at St. Bonaventure's Parish in Bloomington,

Minnesota. (*Id.* ¶12.)  Finally, three members of the Province are residents in nursing

care facilities in Minnesota. (*Id.* ¶ 13.)

In opposition to the Province's Motion to Dismiss, Plaintiff filed an affidavit from

Jennifer Haselberger, a cannon lawyer and consultant that provides canonical advice to

Catholic individuals, groups, and institutions, as well as other entities engaged in legal

processes involving the Catholic Church. (Doc. No. 21.)  Ms. Haselberger states that she

received her licentiate (J.C.L.) in canon law from the Katholieke Universiteit Leuven,

Belgium, in 2004 and additionally holds a Ph.D. from the University of London.

(*Id.* ¶ 2.)  Ms. Haselberger further states that she practiced as a canon lawyer in

Minnesota, North Dakota, Illinois, and internationally, spending 10 years working on

behalf of various dioceses and bishops, including serving as the Chancellor for Canonical

Affairs for the Archdiocese of Saint Paul and Minneapolis, as the Bishop's Delegate for

Canonical Affairs in the Diocese of Fargo, and as Chancellor and Director of the

4

Marriage Tribunal and Safe Environment Program for the Diocese of Crookston. (*Id.* ¶ 3.)  Ms. Haselberger further states that her job duties required her to be involved in the evaluation and formation of priests and deacons at the major and minor seminary levels; that she was involved in the establishment of several civil corporations for Catholic enterprises, including the establishment of Catholic schools and foundations; that she was involved in the drafting of Articles of Incorporation and Bylaws for these entities; and that she was responsible for determining or verifying which corporations qualified for tax exempt status.  (*Id.* ¶¶ 4-5.)  In addition, Ms. Haselberger states that she was a liaison for the Archbishop of Saint Paul and Minneapolis to the various religious congregations serving in the Archdiocese, including the Province.  (*Id.* ¶ 6.)

Based on her experiences and knowledge, Ms. Haselberger sets forth a variety of facts about the Province and its connection to Minnesota.  Ms. Haselberger states that the Province has 85 total friars and agrees with the Province that nine friars from the Province are located in Minnesota.  (*Id.* ¶ 11.)  According to Ms. Haselberger, the Province is comprised of sixteen "friaries" and two of them are located in Minnesota, one in Bloomington and one in Prior Lake.  (*Id.* ¶ 12.)  In 1951, the Province filed an application for a certificate of authority to transact business in Minnesota.  (*Id.* ¶ 13.)  This filing coincided with the establishment of the Assumption Seminary in Chaska, Minnesota.  (*Id.*)  According to Ms. Haselberger, the Province remains in good standing with the Minnesota Secretary of State.  (*Id.*)

In addition to the Retreat Center, Ms. Haselberger states that the 2015 Official Catholic Directory ("Directory")—a compilation of the address of the educational, charitable, and religious institutions operated by the Roman Catholic Church within each diocese—lists two additional organizations affiliated with the Conventual Franciscans: St. Bonaventure Friary and St. Joseph Cupertino Friary.  (*Id.* ¶ 16.)  Further, the Directory indicates that friars from the Province staffed two parishes in Minnesota: Assumption in Richfield and St. Bonaventure in Bloomington.  (*Id.*)  In 2014, a third parish was also listed as having a friar on staff.  (*Id.*)

In 1973, when Plaintiff was allegedly abused, the Directory listed three organizations affiliated with the Conventual Franciscans:  St. Bonaventure Friary, Assumption Seminary, and Franciscan Retreats.  (*Id.* ¶ 17.)  Ms. Haselberger states that from 1951 to 1970, Assumption Seminary was "one of the primary headquarters of the Conventual Franciscans and the Province of Our Lady of Consolation."  (*Id.* ¶ 18.)  At the Assumption Seminary, friars from the Province taught and made decisions regarding advancing novices and candidates to Holy Orders and full profession within the Province and the Conventual Franciscans.  (*Id.*)  In addition, novices of the Province were sent to Assumption Seminary for their religious formation and to profess their religious vows. (*Id.*)  Assumption Seminary was further the site of many administrative gatherings of the leadership of the Province and the Conventual Franciscans.  (*Id.*)  According to Ms. Haselberger, every friar active in the Province from 1951 until 1970 would have been required to have contact with Assumption Seminary and would have spent time at

6

the facility.  (*Id.*)  Thus, Ms. Haselberger surmises that Father Harris, who was ordained

in 1969, likely spent at least part of his formation at Assumption Seminary.  (*Id.*)

Ms. Haselberger states that Assumption Seminary was relocated to Saint Paul, Minnesota

in 1970 and became a House of Studies in 1973.  (*Id.*)

In addition to a physical presence, Ms. Haselberger discusses the purported control

the Province exercises over the Retreat Center.  Ms. Haselberger states that the Retreat

Center is only able to obtain tax-exempt status if it is "under the control of a diocese,

parish, religious order, or other Catholic entity[.]"  (*Id.* ¶ 21.)  Ms. Haselberger states that

the Retreat Center is controlled by the Province.  (*Id.*)  In addition, Ms. Haselberger states

that under canon law, the Retreat Center is governed under the direction of the

Conventual Franciscans and the Province.  (*Id.* ¶ 22.)  Similarly, according to its revised

Articles of Incorporation, the Retreat Center is an entity of the Province.  (*Id.* ¶ 23.)

Finally, Ms. Haselberger states that the Province routinely performs business in

Minnesota.  First, Ms. Haselberger states that the Province does maintain employees and

agents in Minnesota, primarily the Province's friars.  (*Id.* ¶ 24.)  The parish has been

entrusted with the pastoral care of two parishes within the Archdiocese of Saint Paul and

Minneapolis, one in Bloomington and one in Richfield.  (*Id.* ¶ 26.)  The Province

determines which friars will serve at the parishes.  (*Id.* ¶ 27.)  In addition,

Ms. Haselberger states that the Province holds monthly events at the Prior Lake property

and routinely hosts events at the property.  (*Id.* ¶¶ 28-29.)

The Province contests many of Ms. Haselberger's statements in a Supplemental Affidavit from Brother Wolfla, filed with the Province's Reply.  (Doc. No. 25.)  Brother Wolfla states that the Province has 81 friars across nine states and two countries.  (*Id.* ¶ 3.)  He further states that "friaries" are merely the residences of the friars, and states that there are thirteen friaries throughout the United States, two of which are in Minnesota.  (*Id.* ¶ 4.)  Brother Wolfla states that the Province staffs 20 parishes throughout the United States, including one in Minnesota.  (*Id.* ¶ 5.)  One member of the Province worked at a variety of parishes in Minnesota from 2000 to 2014.  (*Id.* ¶ 7.)  This friar served in Bloomington, Saint Paul, Richfield, and Shakopee, Minnesota and left the state in 2014.  (*Id.*)  Another friar held a position at Assumption Parish in Richfield from 2010 to 2015.  (*Id.*)  That staff member has similarly since left the state on Minnesota.  (*Id.*)  Since 2015, no members of the Province have staffed Assumption Parish.  (*Id.*)

Brother Wolfla contests Ms. Haselberger's contention that Assumption Seminary was a "primary headquarters" of the Province.  Instead, Brother Wolfla states that Assumption Seminary was a "formation house" of the Province from 1951 to 1970.  (*Id.* ¶ 8.)  A "formation house" is a place of study for individuals wishing to become members of the Province and for those preparing to enter the priesthood.  (*Id.*)  In addition to Assumption Seminary, the Province operated four other "formation houses" throughout the country:  two in Indiana, one in Missouri, and one in Washington, DC.  (*Id.*)

The Province also asserted that its Minnesota activities are a relatively small part of its overall operations.  First, the Province owns two other properties which are leased to entities similar to the Retreat Center, one in Indiana and one in New Mexico.  (*Id.* ¶ 9.)  Second, the Province conducts numerous activities throughout the United States. (*Id.* ¶ 10.)  Brother Wolfla states that the Province "gives no special attention to Minnesota."  (*Id.*)  He states that over the past twelve months, the Province conducted thirty-six events in fifteen states, only three of which took place in Minnesota.  (*Id.*)

Based on the facts set forth by Brother Wolfla, the Province argues that this case should be dismissed for lack of personal jurisdiction.  (Doc. Nos. 9, 24.)  Based largely on the affidavit of Ms. Haselberger, Plaintiff argues that the Court has general personal jurisdiction over the Province such that the Court may hear Plaintiff's claims. (Doc. No. 19.)  In the alternative, Plaintiff seeks discovery to further develop the jurisdictional facts.  (*Id.*)

## DISCUSSION

### I.   Legal Standard

Personal jurisdiction is required over a defendant for a court to enter a "valid judgment imposing a personal obligation or duty in favor of the plaintiff."  *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 592-93 (8th Cir. 2011) (quotations omitted).  To survive a Rule 12(b)(2) motion to dismiss, the plaintiff must make a prima facie showing of personal jurisdiction.  *Id.* at 592.  The plaintiff may not stand on the allegations in the complaint, but instead must come forward with competent

proof, including affidavits and other evidence, that personal jurisdiction exists over the defendant. *Miller v. Nippon Carbon Co., Ltd.*, 528 F.3d 1087, 1090 (8th Cir. 2008). The party seeking to establish the court's jurisdiction carries the burden of proof, and the burden does not shift to the party challenging jurisdiction. *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 647 (8th Cir. 2003). When relying on the parties' submissions when considering a Rule 12(b)(2) motion, a court views the facts in the light most favorable to the plaintiff. *Id.* at 646-47. Where disputes "arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues . . . ." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13, (1978); *see also Viasystems*, 646 F.3d at 598.

When considering personal jurisdiction, federal courts look to state law, and "may exercise jurisdiction 'over a foreign defendant only to the extent permitted by the forum state's long-arm statute and by the Due Process Clause of the Constitution.'" *Miller*, 528 F.3d at 1090 (quoting *Dakota Indus., Inc. v. Ever Best Ltd.*, 28 F.3d 910, 915 (8th Cir. 1994)). Here, this inquiry requires only one analysis because Minnesota's long-arm statute, Minn. Stat. § 543.19, "is coextensive with constitutional limits." *Johnson v. Woodcock*, 444 F.3d 953, 955 (8th Cir. 2006); *accord Juelich v. Yamazaki Mazak Optonics Corp.*, 682 N.W.2d 565, 570 (Minn. 2004).

To satisfy the Constitutional requirements, "[d]ue process requires sufficient 'minimum contacts' between the defendant and the forum state so that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Epps*,

327 F.3d at 647 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980)).  Whether the exercise of jurisdiction over a defendant offends those notions is broadly broken into two categories of analysis:  specific personal jurisdiction or general personal jurisdiction.  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  Specific personal jurisdiction is "jurisdiction over causes of action arising from or related to a defendant's actions in the forum state," while general personal jurisdiction is "the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose."  *Miller*, 528 F.3d at 1091 (quotations omitted).  Facts establishing personal jurisdiction "must exist either at the time the cause of action arose, the time the suit is filed, or within a reasonable period of time immediately prior to the filing of the lawsuit."  *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 562 (8th Cir. 2003).

## II.      Specific Personal Jurisdiction

Specific personal jurisdiction "is proper 'only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state, meaning that the defendant purposely directed its activities at the forum state and the claim arose out of or relates to those activities.'"  *Johnson v. Arden*, 614 F.3d 785, 75 (8th Cir. 2010) (quoting *Steinbuch v. Cutler*, 518 F.3d 580, 586 (8th Cir. 2008)).  When an exercise of personal jurisdiction turns on conduct from outside the forum state, courts focus on whether those acts "(1) were intentional, (2) were uniquely or expressly aimed at the forum state, and

(3) caused harm, the brunt of which was suffered—and which the defendant knew was likely to be suffered—[in the forum state]." *Viasystems*, 646 F.3d at 594.

Plaintiff does not allege a cause of action based on actions or inactions by the Province in Minnesota. Plaintiff alleges that he is now and at all times relevant to the allegations was a Wisconsin resident and that the alleged sexual abuse at issue occurred in Wisconsin. (Doc. No. 4-1, ¶ 14.) The alleged abuser also resided in Wisconsin at the time of the alleged abuse. (*Id.* ¶ 3.) The Province itself is a Kentucky non-profit corporation headquartered in Indiana. (*Id.* ¶ 2.) Neither the Complaint nor any of the documentation submitted by Plaintiff in opposition to the present motion establishes that any of the conduct at issue happened in Minnesota or was directed to Minnesota. Plaintiff concedes that the current record does not support specific personal jurisdiction. (Doc. No. 18, at 11 n.1.) The Court agrees and concludes there is no specific personal jurisdiction over the Province.

## III.    General Personal Jurisdiction

General personal jurisdiction extends to claims unrelated to a defendant's contacts with the forum state and therefore demands satisfaction of a "higher due-process threshold." *Viasystems*, 646 F.3d at 595. The Supreme Court, in two recent opinions, has provided guidance on the contours of general personal jurisdiction. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011); *Daimler AG v. Bauman*, - U.S. –, 134 S. Ct. 746 (2014). In *Goodyear*, the Supreme Court noted that to be subject to general personal jurisdiction, a corporation must have contacts with a forum state "so

continuous and systematic as to render [it] essentially at home in the forum."  564 U.S. at

919 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)).  The Court in

*Daimler* clarified that an exercise of general personal jurisdiction "in every State in

which a corporation engages in a substantial, continuous course of business" would be

"unacceptably grasping."  134 S. Ct. at 760-61.  Instead, the Court permitted exercises of

general personal jurisdiction that "permit out-of-state defendants 'to structure their

primary conduct with some minimum assurance as to where that conduct will and will

not render them liable to suit.'"  *Id.* at 762 (quoting *Burger King Corp v. Rudzewicz*, 471

U.S. 462, 472 (1985).  Thus, the standard is not simply whether a defendant has a

permanent presence in a forum state, but whether a defendant's presence is so continuous

and systematic that the defendant can be found to have one of its homes in the forum

state.  *See id.* at 761.

The Province does not have the type of connection to Minnesota that establishes

Minnesota as one of the Province's current homes such that an exercise of general

personal jurisdiction is appropriate.  First, the Province does not meet the paradigmatic

examples of ties to a State which satisfy general personal jurisdiction.  The Province is

not incorporated in Minnesota and it does not maintain its principal place of business in

Minnesota.  (*See* Doc. No. 13, ¶ 2.)  Nor does the Province maintain some other presence

in Minnesota that is "so continuous and systematic as to render [the Province] essentially

at home in [Minnesota]."  *Daimler*, 134 S. Ct. at 761.  While the Province does have a

permanent presence in Minnesota, its presence is fairly minor.  The Province owns one

13

property in Minnesota, which it leases to the Retreat Center, an affiliated entity. (Doc. No. 13, ¶ 9.) The Province owns multiple other properties in other states. (Doc. No. 25, ¶ 8,) Of the Province's eighty-plus members, nine reside in Minnesota. (Doc. No. 13, ¶¶ 10-13; Doc. No. 25, ¶ 3.) The Province maintains two friaries connected to its active ministries, but these friaries are only two of thirteen friaries throughout the United States. (Doc. No. 25, ¶ 4.) Further, the Province staffs twenty parishes across seven states. (*Id.* ¶ 5.) Only one of those parishes is located in Minnesota. (*Id.*)

Notably, these contacts are less extensive than the contacts at issue in *Daimler*. There, the Court imputed the contacts to California of Daimler's subsidiary operating in that state. *Daimler*, 134 S. Ct. at 760. Using those contacts, the Court nonetheless concluded that an exercise of general personal jurisdiction was inappropriate. *Id.* at 761-62. The entities at issue there operated multiple facilities, including a regional office in California; the entities were the leading suppliers of luxury vehicles in the forum state; and the sales in California constituted 2.4% of the defendant's global sales. *Id.* at 752. Nonetheless, the Court rejected the exercise of general personal jurisdiction because general personal jurisdiction would be available "in every other State in which [the defendant's] sales are sizable[,]" and "[s]uch exorbitant exercises of all-purpose jurisdiction would scarcely permit out-of-state defendants 'to structure their primary conduct with some minimum assurances as to where that conduct will and will not render them liable to suit.'" *Id.* at 761-62 (citing *Burger King Corp.*, 471 U.S., at 472).

Plaintiff points to several additional purported contacts between the Province and

14

Minnesota.[1]  Plaintiff claims that the Province has a current license to transact business in Minnesota which remains in good standing with the Minnesota Secretary of State.  (Doc. No. 21, ¶ 13, Exs. 4 & 5.)  In addition, Plaintiff contends that the Province runs and controls the Retreat Center (*id.* ¶ 22), and reaps the financial benefits from the Retreat Center's operation (*id.* ¶¶ 23, 25, 29).  Ongoing business activity, including maintaining a business license, is a factor when considering whether a court should exercise general personal jurisdiction.  *See Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 416 (1984) (noting whether a corporation has been licensed to do business in the state as a factor for determining general personal jurisdiction).  However, continuous and substantial business activities were present in *Daimler*, and the Court nevertheless concluded that general jurisdiction was inappropriate.  *Daimler*, 134 S. Ct. at 761-62.  The fairly minor presence of the Province in Minnesota does not exceed the presence imputed to the defendant in Daimler and is not sufficient to support the exercise of general personal jurisdiction.  *See id.*

While Plaintiff does not allege or present facts sufficient to establish general personal jurisdiction at the time the suit was filed, Plaintiff claims that the Province operated the Assumption Seminary in Chaska, Minnesota, as one of its "primary headquarters" from 1951 through the closing of the location in 1970.  (Doc. No. 21,

---

[1] Defendants dispute many of the facts set forth by Plaintiff.  The Court assumes that Plaintiff's characterization is correct for the purposes of this motion.  *Epps v. Steward Info. Servs. Corp.*, 327 F.3d at 646-47.

¶ 18.)  Plaintiff further claims that the Assumption Seminary relocated to St. Paul, Minnesota in 1970, and became a "House of Studies" in 1973.  (*Id.*)  It is unclear whether the Assumption Seminary remained one of the Province's "primary headquarters" in 1973, when the present cause of action arose.  It is similarly unclear whether a "primary headquarters" constitutes the type of contact with Minnesota sufficient for the proper exercise of general personal jurisdiction.  Defendants deny that the Assumption Seminary was a "primary headquarters."  (Doc. No. 25, ¶ 8.)  Discovery is available to resolve this type of dispute.  *Oppenheimer Fund*, 437 U.S. at 351 n.13.  Therefore, the Court will order limited jurisdictional discovery into the role of the Assumption Seminary to determine whether it operated as a presence sufficient for the exercise of general personal jurisdiction at the time Plaintiff's cause of action arose.

Plaintiff additionally argues that general personal jurisdiction is appropriate over the Province because the Province is the "alter ego" of the Retreat Center.  (Doc. No. 19, at 15-24.)  General personal jurisdiction may be proper over a nonresident corporation "based on the activities of the nonresident corporation's in-state subsidiary, but only if the parent so controlled and dominated the affairs of the subsidiary that the latter's corporate existence was disregarded so as to cause the residential corporation to act as the nonresidential corporate defendant's alter ego."  *Epps*, 327 F.3d at 649 (citing *Contractors, Laborers, Teamsters & Engineers Health and Welfare Plan v. Hroch*, 757 F.2d 184, 190 (8th Cir.1985) and *Lakota Girl Scout Council, Inc. v. Havey Fund–Raising Management, Inc.*, 519 F.2d 634, 637 (8th Cir.1975)).  "If the resident subsidiary

16

corporation is the alter ego of the nonresident corporate defendant, the subsidiary's contacts are those of the parent corporation's [sic], and due process is satisfied." *Id.* (citing *Lakota Girl Scout Council*, 519 F.2d at 637). Corporate formalities may be disregarded when one corporation is "so controlled that it is, in fact, a mere instrumentality or adjunct of another corporation." *Lakota Girl Scout Council*, 519 F.2d at 637.[2] When considering these principles, "the Eighth Circuit held that while a degree of 'control and domination' by the parent over the subsidiary was necessary, rigid satisfaction of the alter ego test was not." *George v. Uponor Corp.*, 988 F. Supp. 2d 1056, 1064 (D. Minn. 2013) (citing *Viasystems*, 646 F.3d at 596).

Plaintiff argues that the Retreat Center's contacts to the forum can be imputed to the Province. Plaintiff asserts that the directors and executives of the Retreat Center are members of the Province and the Province's president is a member of the corporate board of the Retreat Center; the head of the Province has to approve certain actions of the Retreat Center; the Retreat Center is operated under the rules and regulation of the Province; the Province holds the Retreat Center out to the public as one of its own and owns the property used by the Retreat Center; the Province collects the profits of the Retreat Center and uses the Retreat Center for its own funding; the Retreat Center

---

[2]     A court's exercise of general personal jurisdiction often turns on whether a plaintiff can pierce the defendant's corporate veil. *Epps*, 327 F.3d at 649. This inquiry is governed by State law. *Id.* Under Minnesota law, "[a] court may pierce the corporate veil to hold a party liable for the acts of a corporate entity if the entity is used for a fraudulent purpose or the party is the alter ego of the entity." *Equity Trust Co. Custodian ex rel. Eisenmenger IRA v. Cole*, 766 N.W.2d 334, 339 (Minn. Ct. App. 2009).

receives its tax exempt status purely because it is controlled by the Province; and the Retreat Center is run and staffed by members of the Province. (Doc. No. 21, ¶¶ 13-29.) Based on these facts, Plaintiff argues that the Retreat Center is merely a front for the Province's dealings in Minnesota and that there is a loss of "corporate separateness" between the Retreat Center and the Province sufficient to treat the Retreat Center as the "alto ego" of the Province. (Doc. No. 19, at 17-18.)

The Province responds by arguing that facts establishing veil piercing have not been pled or proven. (Doc. No. 24, 15-16.) At this stage, without a factual hearing, the Court must construe the facts presented by Plaintiff in the light most favorable to him. *Epps*, 327 F.3d 646-47. This factual dispute is best resolved through targeted discovery. Therefore, the Court will order limited jurisdictional discovery into the control of the Province over the Retreat Center to determine whether the Province "so control[s] and dominate[s] the affairs of the [Retreat Center] that the latter's corporate existence [is] disregarded[.]" *Id.* at 649. Plaintiff included proposed discovery as part of its opposition to the present motion. (Doc. No. 20, ¶¶ 11-13, Exs. 8-10.) While the Court does not order that discovery to be completed here, the Court does expect that Plaintiff would not need discovery beyond that which was requested in their opposition in order to complete the limited jurisdictional discovery ordered below.

**IV.    Transfer**

Lastly, Defendant alternatively requests that the Court transfer the case to the United States District Court for the Eastern District of Wisconsin pursuant to 28 U.S.C.

18

§ 1406.  (Doc. No. 12, at 14.)  Section 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  The Eighth Circuit has noted that when personal jurisdiction is lacking, transfer may be a preferable alternative to dismissal.  *See Thompson v. Ecological Science Corp.*, 421 F.2d 467, 470 n.4 (8th Cir.1970) ("Even if personal jurisdiction had not been obtainable in Arkansas, a transfer under 28 U.S.C. § 1406 might have been a preferable alternative to dismissal.").  If the Court may properly exercise general personal jurisdiction over the Province, then the Province may be properly subject to suit in Minnesota.  Thus, whether transfer is preferable to dismissal would be moot.  Whether this case is more conveniently heard in the Eastern District of Wisconsin is not a question presented in the Province's motion, and the Court will not address that question here.

## CONCLUSION

Fact issues remain over whether the Court can properly exercise general personal jurisdiction over the Province in this case.  The connection between the allegations of abuse in the Complaint and Minnesota is minimal.  However, Plaintiff has presented facts that, if true, may present a basis for general personal jurisdiction.  Limited discovery into these issues will efficiently determine whether the Court may properly exercise personal jurisdiction over the Province.

**ORDER**

Accordingly, **IT IS HEREBY ORDERED** that:

1.      Defendant's The Province of Our Lady of Consolation, Inc.'s Motion to

Dismiss or, in the Alternative, Transfer (Doc. No. [9]) is **DENIED**.

2.      The parties may engage in limited jurisdictional discovery on the following

issues:

        a.      whether the Assumption Seminary operated in Minnesota as a

presence sufficient for the exercise of general personal jurisdiction at the

time Plaintiff's cause of action arose; and

        b.      whether the Province so controls and dominates the affairs of

the Retreat Center that the Retreat Center's corporate existence should be

disregarded.

3.      The parties will hold a status conference with the assigned magistrate judge

within four (4) weeks to determine a schedule for the limited discovery ordered here and

agree on a schedule for further submissions to this Court on the two jurisdictional

questions remaining.  All other proceedings in this case are hereby stayed.


Dated:  October 28, 2016                    s/Donovan W. Frank
                                            DONOVAN W. FRANK
                                            United States District Judge

20